KAREN P. HEWITT
United States Attorney
REBECCA S. KANTER
Assistant U.S. Attorney
California State Bar No. 230257
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Phone: (619) 557-6747
Fax: (619) 235-2757
E-mail: rebecca.kanter@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1333-H |
|---|---|---|
| Plaintiff, | ) ) | **RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS:** |
| v. | ) ) | |
| | ) | **(1) TO COMPEL DISCOVERY** |
| | ) | **(2) TO FILE FURTHER MOTIONS** |
| FERNANDO PEDROZA-MACIAS, | ) | |
| Defendant. | ) ) | Date: July 21, 2008 Time: 2:00 p.m. |
| | ) | Courtroom: 13 |
| | ) ) | The Honorable Marilyn L. Huff |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, United States Attorney, Karen P. Hewitt, and Assistant U.S. Attorney Rebecca S. Kanter, and hereby files its Response and Opposition to Defendant's Motions to Compel Discovery and File Further Motions. This Response and Opposition is based upon the files and records of this case, together with the attached Statement of Facts, Memorandum of Points and Authorities, as well as the Government's Motion for Reciprocal Discovery.

/ /

/ /

//

//

Criminal Case No. 08CR1333-H

**I**

**STATEMENT OF FACTS**

**A.    Defendant's Arrest**

On February 26, 2008, at approximately 9:30 a.m., Border Patrol Agents Marc Gonzalez, Thane Gallagher, and Jeffrey Hays were conducting surveillance near the 1200 block of South Vine Street in Fallbrook, California when they encountered Fernando Pedroza-Macias ("Defendant.") They identified themselves as U.S. Border Patrol Agents and questioned the Defendant about his identity and immigration status. Defendant told Agent Gonzalez that his name was Jasiel Mazias-Pedroza, born on September 9, 1980. He said was born in Aguascalientes, Mexico and was citizen of Mexico. He said he left his identification documents inside his residence. He stated that he had previously been arrested for Driving Under the Influence. Defendant's hands were shaking and his voice was trembling, and he appeared to be nervous. When he provided his birthday, he did so very slowly and provided first the year, then the month, as if he was attempting to think of a date of birth.

A records check did not reveal any immigration documents for Defendant. Defendant continued to insist that he did in fact possess immigration documents, but that he was not carrying them with him. Defendant was arrested for failure to carry immigration documents in violation of 8 U.S.C.§ 1304(e) and transported to the Murietta Border Patrol station for further processing.

**B.    Defendant's Criminal and Immigration History**

At the station, a more comprehensive records check revealed that Defendant was previously ordered removed from the United States by an Immigration Judge on October 30, 2002 and physically removed the same day.

Defendant's criminal history includes a felony conviction on September 21, 1998 for Commercial Burglary in violation of California Penal Code Section 459. Defendant was convicted on March 8, 2001 for Transportation/Sale of a Controlled Substance in violation of California Health & Safety Code Section 11379, for which he received a sentence of 240 days in jail. Defendant also has two misdemeanor convictions from 2007: a conviction on March 24, 2007 for Driving Under the Influence in violation of California Vehicle Code Section 23152 and a conviction on November 21, 2007 for Battery in violation of California Penal Code Section 242.

**C.    Defendant's Post-Miranda Confession**

On February 26, 2008, at approximately 1:03 p.m., Agents Gonzalez and Gallagher read Defendant his Miranda rights. Defendant stated that he understood his rights and agreed to speak to agents without an attorney present. Defendant admitted to being a citizen and national of Mexico illegally present in the United States without proper immigration documents. He also admitted to his prior convictions. He stated that after being deported in October, 2002, he illegally re-entered through the Tecate Port of Entry in November, 2002. He went to live in Fallbrook where his parents and then-girlfriend lived. Defendant said he has lived in Fallbrook, California since that time.

**II**

**DEFENDANT'S MOTIONS TO COMPEL DISCOVERY**

On March 28, 2008, the Government provided Defendant with 40 pages of discovery, including the complaint and statement of facts, reports from the Border Patrol officers, summaries of the statements made by Defendant and a DVD of Defendant's post-Miranda interview. On April 30, 2008, the Government provided Defendant with nine additional pages of discovery related to Defendant's criminal convictions.

**(1)    Defendant's Statements**

The Government recognizes its obligation, under Rules 16(a)(1)(A) and 16(a)(1)(B), to provide to Defendant the substance of Defendant's oral statements and written statements. (Unless otherwise noted, all references to "Rules" refers to the Federal Rules of Criminal Procedure.) The Government has produced all of the Defendant's statements that are known to the undersigned Assistant U.S. Attorney at this date. If the Government discovers additional oral or written statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be promptly provided.

However, the Government objects to providing Defendant with a copy of the rough notes at this time. The Government is not required to produce the notes pursuant to the Jencks Act because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The notes are not Brady material because, as discussed further, the notes do not present any material exculpatory information

or any evidence favorable to Defendant that is material to guilt or punishment. If, during a future evidentiary hearing, certain rough notes become particularly relevant, the notes in question will be made available to Defendant.

**(2)     Arrest Reports, Notes, and Dispatch Tapes**

The Government has provided Defendant with all known reports related to Defendant's arrest in this case. The Government is not aware at this time of the existence of any dispatch tapes relevant to this case. The Government will continue to comply with its obligation to provide to Defendant all reports subject to Rule 16(a)(1)(A) and (B).[1] The Government has no objection to the preservation of the agents' handwritten notes. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, as explained above, the Government objects to providing Defendant with a copy of the rough notes at this time. The Government is not required to produce the notes pursuant to the Jencks Act because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The notes are not Brady material because, as discussed further, the notes do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment. If, during a future evidentiary hearing, certain rough notes become particularly relevant, the notes in question will be made available to Defendant.

**(3)     Report of Scientific Tests or Examinations**

At this time, the Government is not aware of any scientific tests that have been performed in connection with this case. The Government will provide Defendant with the results of any scientific tests or examinations in accordance with Rule 16(a)(1)(F)[2] if any such tests are conducted.

---

[1]     Defendant requests arrest reports and sworn statements pursuant to Rule 16(a)(1)(B) & (C). Rule 16(a)(1)(C) pertains to organizational defendants, which Defendant is not. The Government, therefore, interprets this as a request pursuant to Rule 16(a)(1)(A) and (B).

[2]     Defendant requests reports of scientific tests or examination pursuant to Rule 16(D). Since there is no such subsection in Rule 16, the Government interprets this as a request pursuant to Rule 16(a)(1)(F).

**(4)    Brady Material**

The Government has and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963) to disclose material exculpatory information or evidence favorable to Defendant when such evidence is material to guilt or punishment.  The Government recognizes that its obligation under Brady covers not only exculpatory evidence, but also evidence that could be used to impeach witnesses who testify on behalf of the United States.  See Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Bagley, 473 U.S. 667, 676-77 (1985).  This obligation also extends to evidence that was not requested by the defense.  Bagley, 473 U.S. at 682; United States v. Agurs, 427 U.S. 97, 107-10 (1976).  "Evidence is material, and must be disclosed (pursuant to Brady), 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. 1997) (en banc).  The final determination of materiality is based on the "suppressed evidence considered collectively, not item by item."  Kyles v. Whitley, 514 U.S. 419, 436-37 (1995).

Brady does not, however, mandate that the Government open all of its files for discovery.  See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam).  Under Brady, the United States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 1428-29 (9th Cir. 1995)); (3) evidence that the defendant already possesses (see United States v. Mikaelian, 168 F.3d 380-389-90 (9th Cir. 1999) amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the undersigned Assistant U.S. Attorney could not reasonably be imputed to have knowledge or control over.  See United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001).   Brady does not require the Government "to create exculpatory evidence that does not exist," United States v. Sukumolahan, 610 F.2d 685, 687 (9th Cir. 1980), but only requires that it "supply a defendant with exculpatory information of which it is aware."  United States v. Flores, 540 F.2d 432, 438 (9th Cir. 1976).

**(5)    Information That May Result in a Lower Sentence Under the Guidelines**

The Government has provided and will continue to provide Defendant with all Brady material that may result in mitigation of Defendant's sentence.  Nevertheless, the Government is not required to

1 provide information bearing on Defendant's sentence until after Defendant's conviction or guilty plea 2 and prior to her sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) 3 (no Brady violation occurs "if the evidence is disclosed to the defendant at a time when the disclosure 4 remains in value").

**(6)   Defendant's Prior Record**

The Government has provided Defendant with a copy of his known prior criminal record and, consequently, has fulfilled its duty of discovery under Rule 16(a)(1)(D).[3] See United States v. Audelo-Sanchez, 923 F.2d 129 (9th Cir. 1990). To the extent that the Government determines that there are any additional documents reflecting Defendant's prior criminal record, the Government will provide those to Defendant.

**(7)   Any Proposed 404(b) Evidence**

The Government will disclose in advance of trial the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Fed. R. Evid. 404(b). Evidence should not be treated as "other bad acts" evidence under Fed. R. Evid. 404(b) when the evidence concerning the other bad acts and the evidence concerning the crime charged are "inextricably intertwined." United States v. Soliman, 812 F.2d 277, 279 (9th Cir. 1987).

**(7)   Evidence Seized**

The Government has complied and will continue to comply with Rule 16(a)(1)(E)[4] in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant.

//

---

[3] Defendant requests evidence of his prior record pursuant to Rule 16(a)(1)(B). The Government interprets this as a request pursuant to Rul 16(a)(1)(D), which is the section of the discovery rule pertaining to a defendant's prior record.

[4] Defendant again requests this discovery pursuant to Rule 16(a)(1)(C). Because Rule 16(a)(1)(C) only applies to organizational defendants, the Government interprets this as a request under Rule 16(a)(1)(E).

**(8)    Request for Preservation of Evidence**

The Constitution requires the Government to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the Government, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001). The Government has made every effort to preserve evidence it deems to be relevant and material to this case, including sending a letter to the agency in charge on December 3, 2007 requesting the specific preservation of evidence. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the Government that results in actual prejudice to the Defendant. See Illinois v. Fisher, 540 U.S.1174, 124 S.Ct. 1200 (2004) (per curiam); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

**(10)    Tangible Objects**

The Government has complied and will continue to comply with Rule 16(a)(1)(E)[5] in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy documents and tangible objects that are within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(11)    Evidence of Bias or Motive to Lie**

The Government recognizes its obligation under Brady and Giglio to provide evidence that could be used to impeach Government witnesses including material information regarding demonstrable bias or motive to lie. The Government is not aware of any evidence of any bias or motivation to lie on the part of prospective government witnesses. If the Government discovers the existence of information

---

[5]    Defendant requests this discovery pursuant to Rule 16(a)(2)(C). Because there is no such subsection in Rule 16, the Government interprets this as a request under Rule 16(a)(1)(E).

related to a government witness's bias or motive to lie, the information will be provided to the Defendant.

**(12)  Impeachment Evidence**

As discussed elsewhere, the Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to impeach Government witnesses.

**(13)  Evidence of Criminal Investigation of Any Government Witness**

Defendant is not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities.  The Government is under no obligation to turn over the criminal records or rap sheet of its potential witnesses.  <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976).  The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the United States intends to call in its case-in-chief.

**(14)  Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity**

The Government recognizes its obligation under <u>Brady</u> and <u>Giglio</u> to provide material evidence that could be used to impeach Government witnesses including material information related to perception, recollection, ability to communicate, or truth telling.  The Government strenuously objects to providing any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic because such information is not discoverable under Rule 16, <u>Brady</u>, <u>Giglio</u>, <u>Henthorn</u>, or any other Constitutional or statutory disclosure provision.

**(15)  Witness Addresses**

The Government has already provided Defendant with the reports containing the names, work addresses, and telephone numbers of the inspectors, officers and special agents whom asked questions of Defendant and found the marijuana in the vehicle.  In its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required.  See <u>United States v. Discher</u>, 960 F.2d 870 (9th Cir. 1992); <u>United States v. Mills</u>, 810 F.2d 907, 910 (9th Cir. 1987).  The Government strenuously objects to providing the home addresses or the home or personal cellular telephone numbers to Defendant.  In non-capital cases, the Government is not even required to disclose the names of its witnesses prior to trial.  <u>United States v. Dishner</u>, 974 F.2d 1502, 1522 (9th Cir 1992); (citing <u>United States v. Steel</u>, 759

F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996); see also United States v. Bejasa, 904 F.2d 137 (2d Cir. 1990) (holding that United States did not improperly deny defendant access to government witnesses whose telephone numbers and addresses the government refused to provide because defendant knew the identities of the government witnesses and presumably knew their telephone numbers or could have contacted them through the exercise of due diligence).

**(16)     Name of Witnesses Favorable to the Defendant**

The Government is not aware of the names of any witnesses favorable to the Defendant's case. If the Government discovers any witnesses favorable to Defendant, the names of such witnesses will be promptly provided.

**(17)     Statements Relevant to the Defense**

The Government will provide all statements relevant to Defendant as required by Rule 16, Brady, and Jencks.    The Government is not all possible information and evidence regarding any speculative defense claimed by Defendant. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(18)     Jencks Act Material**

Rule 26.2 incorporates the Jencks Act, 18 U.S.C. §3500, into the Federal Rules of Criminal Procedure. The Jencks Act requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. §3500(b). For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by her, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. §3500(e).    If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)).    There is no applicable Jencks material at this time. If the case proceeds to trial, the Government will produce any

materials covered by the Jencks Act relevant to the testifying witness(es).

**(19)    Giglio Information**

An agreement that the Government makes with a witness for testimony in exchange for money or in exchange for favorable treatment in the criminal justice system is generally subject to disclosure as impeachment evidence under Brady and Giglio. See United States v. Kojayan, 8 F.3d 1315, 1322-23 (9th Cir. 1993); Benn v. Lambert, 238 F.3d 1040, 1054-60 (9th Cir. 2002). The Government is not aware of any Giglio information related to this case. If the Government discovers the existence of Giglio information, the information will be provided to the Defendant.

**(20)    Personnel Records of Government Officers Involved in the Arrest**

The Government objects to Defendant's request that the Government reveal all citizen complaints and internal affair inquiries into the inspectors, officers, and agents who were involved in this case – regardless of whether the complaints or inquiries are baseless or material and regardless of whether the Government intends to call inspectors, officers, and agents to testify. As previously noted, the Government will comply with Henthorn and disclose to Defendant all material incriminating information regarding the testifying inspectors, officers, and special agents

**(21)    Government Examination of Law Enforcement Personnel Files**

The Government will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the Government intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

### III

### DEFENDANT'S MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

The Government does not object to the granting of leave to file further motions as long as the further motions are based on newly discovered evidence or discovery provided by the Government

subsequent to the instant motion at issue.

## IV

## GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY

### A. All Evidence That Defendant Intends To Introduce In His Case-In-Chief

Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), the Government requests that Defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendant, which he intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness. The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

### B. Reciprocal Jencks – Statements By Defense Witnesses (Other Than Defendant)

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by Defendant. The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified. However, to expedite trial proceedings, the Government hereby requests that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

//
//
//

1  //

## V

## CONCLUSION

For the foregoing reasons, the Government requests that the Court deny Defendant's motions, except where unopposed, and grant the Government's motion for reciprocal discovery.

DATED: July 15, 2008.

                     Respectfully submitted,

                     KAREN P. HEWITT
                     United States Attorney

                     /s/***Rebecca Kanter***
                     REBECCA S. KANTER
                     Assistant United States Attorney
                     Attorneys for Plaintiff
                     United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR1333-H |
| | ) | |
| Plaintiff, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| | ) | |
| FERNANDO PEDROZA-MACIAS, | ) | |
| | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, REBECCA S. KANTER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **RESPONSE AND OPPOSITION** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Marc X. Carlos

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 15, 2008.

/s/ ***Rebecca Kanter***
REBECCA S. KANTER